## S. W. OAKEY *v.* J. S. CORRY.

The assignee of a petitioner to the Federal Court of Mississippi for the benefit of the bankrupt Act of 1841, may, under the orders and directions of that Court, sell lands situated in Louisiana.

The registry of sales and mortgages will give public notice, although the proof on which the recorder admits the registry, be informal.

APPEAL from the District Court of Claiborne, *Drew*, J. *McGuire & Ray* and *Jones*, for plaintiff. *Egan*, for *Styles* and *Wife*, Warrantors.

VOORHIES, J. This is a petitory action for the recovery of certain tracts of land described in the plaintiff's petition.

The defendant pleaded the general issue, and the prescription of ten years under a title translative of property, averring that he purchased the property in dispute from *James M. Morrow*, whom he called in warranty. *Morrow* admitted the alleged transfer, and averred that he acquired his title by purchase from *David M. Styles* and *Wife, Eliza M. McBeth*, of Mississippi, whom he also called in warranty. *Styles* and *Wife* adopted the defense set up by the defendant, *Corry*, in his answer to the plaintiff's petition, but made no disclosure of the source from which they derived their title.

There was judgment in favor of the plaintiff recognizing his title to the undivided half of the land in dispute, but allowing to the defendant the value of his improvements, after deducting the rents, and in favor of the defendant against his warrantor, *Morrow*, and also in favor of the latter against his warrantors, *Styles* and *Wife*. The defendant and warrantors have appealed.

On the 28th of March, 1842, *Daniel McDougall* filed a petition in the United States Court for the southern District of Mississippi, to be declared a bankrupt, under the Act of Congress entitled, " An Act to establish a uniform system of bankruptcy throughout the United States," approved August 19th, 1841, and was accordingly so declared. Among the property surrendered to his creditors, as appears from an extract from the schedule filed with his petition, was the following :

" The undivided half of the following described lands, to-wit : West half of section No. 10, township No. 21, range No. 6 West, containing 315 95-100 acres. Section No. 9, township No. 21, range No. 6 West, containing 640 44-100 acres, lying and being in the State of Louisiana."

On the 14th February, 1844, *F. S. Hunt*, general assignee in bankruptcy for that District, was authorized by an order of Court, " to sell the real estate

of *Daniel McDougall*, in Louisiana, in the city of Jackson, on giving thirty days notice by advertisement for that time in the Southern Reformer, published at Jackson." A report of the assignee filed in the suit of the bankrupt, on the 24th February, 1845, shows that the property thus described was accordingly sold, and the plaintiff as the highest bidder, became the purchaser for the price of $270. The assignee on the same day of the filing of the report, executed a deed of conveyance of the property to the plaintiff, a copy of which, as appears from the certificate of the parish Judge, was recorded in the parish of Claiborne, where the land in controversy is situated, on the 7th of July, 1845, and which annexed to the plaintiff's bill of exceptions, we think, was improperly ruled out by the District Judge, as it was legal evidence to show the registration. An admission appears of record showing that the courthouse, in the parish of Claiborne, and all the records, were destroyed by fire. That the title of *McDougall*, to the property surrendered by him, immediately vested by his bankruptcy in the assignee for the benefit of his creditors, is a proposition which must be considered as undeniable.

But it is objected that a bankrupt's sale in one State, of lands lying in another, is a nullity. This objection appears to us untenable. The third section of the Act under which the sale in question was made, provides that the assignee shall have power to "sell, manage and dispose of the same (the property and effects) as could be done by the bankrupt, subject, however, to the orders and directions of the Court." The question then presents itself, could the bankrupt have made a valid transfer of his title in Mississippi to his lands lying in this State? If so, it is difficult to perceive why it could not be done by the assignee "subject to the orders and directions of the Court." We are not aware of the existence of any law in our State which prohibits such an alienation of property, and it does not appear to us to be in violation of the principle announced in the case of *McCormick* v. *Sullivan*, 10th Wheat. 192, "that the title and disposition of real property is exclusively subject to the *lex loci rei sitae* which alone prescribe the mode by which a title to it can pass from one person to another." It is not unusual to see conveyances of real property in this State executed in other States; and yet the validity of such conveyances has never been questioned. In relation to the question as to the registry, we consider the rule settled in the case of *N. Hampton* v. *J. S. Morgan*, 9 An. 555, in which it was decided that "the object of registry, both of sales and mortgages, being to give notice to the public, the object is fulfilled, no matter whether the proof on which the recorder acts, was formal or informal." The recorded copy and original deed of conveyance from the assignee to the plaintiff are both in evidence and the correctness of the former as a copy from the original is not questioned. It follows, therefore, that the title of the bankrupt to the property in controversy was fully vested in the plaintiff on the 7th of July, 1845. The evidence shows that the defendant's title to the same property is derived from *Daniel McDougall*, subsequent to his bankruptcy, by a conveyance which he made of it to *Styles* and *Wife* on the 17th of May, 1851, for the price of $500. This deed recites: "But I, the said *McDougall*, do not guarantee the title of said land against donations, alienations, actions or other incumbrances, and merely convey such rights and titles as I now have to the same." This deed was executed in Mississippi, where the vendees resided.

The appellee has prayed in his answer for amendment of the judgment which decrees in favor of the defendant the recovery of $900 as "one half of the

value of the lands, occasioned by the improvements placed thereon " by him. In this we are of opinion the judgment should be reformed. It is in favor of the plaintiff for the recovery of the "undivided half of the lands in controversy." It is clear, therefore, that the parties by its effect being considered joint proprietors, must proceed to the partition of the property according to the rules prescribed by law.

It is, therefore, ordered and decreed that the judgment of the District Court be amended by rejecting the defendant's demand for the value of his improvements, reserving the same together with the claim for rent, against him to be adjusted in the partition of the property, and so amended that said judgment be affirmed with costs in both courts.